AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Southern District of California

FILED

NOV 1 4 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

HTC One A9s Phone
IMEI: 351515080300173
S/N: FA71BBY00074

)
)
)
)
)
)

Case No.

**19MJ5084**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(i) & (v)(I); | Conspiracy to Bring Certain Aliens Without Presentation; Conspiracy to Use False |
| 8 USC 371; 18 USC 1001(a)(2); | Documents; 1False Statements; False Documents; and Aiding and Abetting as to |
| 18 USC 1001(a)(3); 18 USC 1512 the | the Falsification of Records or Documents in a Federal Investigation |

The application is based on these facts:

See attached affidavit of Mike Brown, HSI Special Agent

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mike Brown, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11/13/2019**

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mike Brown, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1.      This affidavit supports an application for a warrant to search the following cell phones:

    a.      NUU_A3 phone
            IMEI (Slot1): 354700084685038
            IMEI (Slot 2): 354700084685046
            Henry Claude VINCENT
            (**Target Device 1**);

    b.      HTC One A9s phone
            IMEI: 351515080300173
            S/N:  FA71BBY00074
            Thomas JULES
            (**Target Device 2**);

collectively referred to herein as the **Target Devices**, as described in Attachments A-1 through A-2 (incorporated herein by reference), and seize evidence of crimes and property used in the commission of crimes, specifically, violations of 8 U.S.C. § 1324(a)(1)(A)(i) and (v)(I) – Conspiracy to Bring Certain Aliens Without Presentation; 8 U.S.C. § 371 – Conspiracy to Use False Documents; 18 U.S.C. § 1001(a)(2) – False Statements; 18 U.S.C. § 1001(a)(3) – False Documents; and 18 U.S.C. §§ 1519 and 2 – Aiding and Abetting as to the Falsification of Records or Documents in a Federal Investigation.  Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe that there is probable cause to believe that a search of the **Target Devices** as described in Attachments A-1 and A-2 will produce evidence of the aforementioned crimes, as described in Attachment B. The **Target Devices** are currently in the possession of the Department of Homeland Security and presently are stored at 2255 Niels Bohr Court, San Diego, CA 92154.

2.     The requested warrants relate to the investigation of Henry Claude VINCENT ("VINCENT") and Thomas JULES ("JULES"), all of whom entered the United States from Mexico illegally on or about October 1, 2019.  They claimed to be have a familial relationship to avoid further detention by immigration authorities. The **Target Devices** currently are in the possession of the Department of Homeland Security at 2297 Niels Bohr Court, San Diego, CA 92154.

3.     The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents.  The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case.  Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.  Dates, times, and amounts are approximate.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent (SA) with ICE, HSI, and have been so employed since April 2001.  I currently am assigned to the Document and Benefit Fraud Task Force, where my duties include investigating fraudulent applications for immigration benefits, the manufacture and sale of fraudulent immigration documents, and financial exploitation of immigrants.

5.     I am a graduate of the Federal Law Enforcement Training Center, Brunswick, Georgia, having successfully completing the required coursework.  I am also a graduate of the Federal Criminal Investigator Training Program (CITP) and the Customs Basic Enforcement academies.

6.     As a Special Agent, my primary duties include the investigation of criminal immigration-related violations under Title 8 of the United States Code and identity fraud-related investigations under Title 18 of the United States Code.  I have spoken with other

1  agents with extensive experience in human smuggling and identity fraud-related
2  investigations. I have arrested or participated in the arrest of persons for violations under
3  Titles 8 and 18 of the United States Code. I have conducted interviews with arrested
4  persons and their associates, as well as cooperating individuals and informants. I have
5  conducted surveillance of individuals involved in human smuggling and illegal re-entries,
6  and individuals suspected of identity fraud while operating inside the United States.
7  Through these investigative activities, I have gained a working knowledge and insight into
8  the typical activity of individuals attempting to circumvent the United States' immigration
9  laws by avoiding apprehension or maintaining a presence in the United States without
10  detection.

11      7.    Since August 2001, I have been involved in the investigations of fraud and
12  smuggling related apprehensions near the international border between the United States
13  and Mexico. My current assignment is part of what is known as the Southwest Border
14  Surge Initiative. My duties include taking sworn statements from defendants, other
15  individuals without legal status apprehended as part of a group near the border, and children
16  where possible; preparing reports for criminal and administrative cases; collecting
17  evidence; seizing personal property; and creating intelligence reports.

18      8.    Generally and subject to certain exceptions, when an adult without legal status
19  is apprehended for an illegal entry but has her or his minor child present, this adult may be
20  released from immigration custody or not subject to criminal prosecution in order to avoid
21  separation from the child. Subject to certain exceptions, when an unaccompanied minor
22  (i.e., a minor without legal status and who is not with a parent or guardian) is apprehended
23  for an illegal entry, that unaccompanied minor eventually is released from immigration
24  custody or not subject to criminal prosecution. During my current assignment as part of
25  the Southwest Border Surge Initiative, I have been tasked with investigating whether
26  individuals without legal status are making fraudulent claims about: (a) their status as a
27  parent to a purported minor child who is with them; or, (b) their status as a minor. These
28  claims are made in order to avoid extended detention at immigration facilities or criminal

1  prosecution.  During interviews, individuals who admit to the false claims explain how
2  human smugglers or other individuals without legal status told them to make these false
3  claims in order to gain entry into the United States.

4         9.  Through the course of my training, investigations, and conversations with
5  other law enforcement personnel, defendants, and smuggled humans, I am aware that it is
6  a common practice for: (a) human smugglers to work in concert with other individuals and
7  to do so by utilizing cellular telephones, and portable radios to maintain communications
8  with co-conspirators in order to further their criminal activities; (b) the smuggled aliens to
9  communicate with the human smugglers or a go-between by utilizing cellular telephones
10 in order to further their illegal entry into the United States; (c) the smuggled aliens will
11 have information stored on their cellular telephones that show their true identity including
12 name, nicknames, date of birth, home, school or work addresses and descriptions, familial
13 associations; and (d) smuggled aliens, if relying on false statements or documents about
14 being in a parent-minor child relationship or being an unaccompanied minor in an attempt
15 to gain entry into the United States and/or to avoid further detention or criminal
16 prosecution, will have information stored on their cellular telephones that show the
17 gathering of information to support these false statements or documents.  Conspiracies
18 involved in the smuggling and trafficking of undocumented aliens generate many types of
19 evidence including, but not limited to, cellular phone-related evidence such as voicemail
20 messages referring to the method and manner of the smuggling venture, arrangements of
21 travel and payment, names, photographs, text messaging (via SMS or other applications),
22 and phone numbers of co-conspirators.  I also know that human smugglers often use
23 fraudulent information to subscribe to communication facilities, especially cellular
24 telephones, and frequently change communications facilities to thwart law enforcement
25 efforts to intercept their communications.

26       10.  In preparing this affidavit, I have conferred with other agents and law
27 enforcement personnel who are experienced in the area of human smuggling
28 investigations, and the opinions stated below are shared by them.  Further, I have personal

1  knowledge of the following facts, or have had them related to me by persons mentioned in
2  this affidavit.

3        a.    Human smugglers and smuggled aliens use "digital devices," including
4  cellular telephones and smart electronic devices with messaging applications because these
5  devices are mobile.  In addition, these devices allow smugglers and smuggled aliens to
6  have instant access to telephone calls, instant messaging, text messaging, social media
7  applications, and voice messaging.

8        b.    Human smugglers and smuggled aliens use their cellular telephones
9  and smart electronic devices to communicate amongst each other to coordinate the logistics
10  and payments related to the smuggling of the undocumented aliens into the United States
11  and from thereon.  Regarding the logistics, the smuggling method may include obtaining,
12  making, altering, or using what appear to be official birth records from a foreign country
13  to show a parent-minor child relationship between smuggled aliens or that a smuggled alien
14  is an unaccompanied minor in order to avoid further detention or criminal prosecution after
15  apprehension by immigration authorities such as Border Patrol Agents.

16        c.    An undocumented alien or someone closely associated with this
17  undocumented alien may make contact using their cellular phones or smart electronic
18  devices with an initial human smuggler while the undocumented alien is outside of the
19  United States.  They will discuss over the phone or via a messaging application about the
20  logistics as to how to smuggle this undocumented alien into the United States (such as
21  using false documents) and the financial payments involved with the smuggling act.  Using
22  the phone or a messaging application on the phone, this smuggler will work with other
23  associates to coordinate how to smuggle this undocumented alien along with the financial
24  payments.  Using the phone itself or a messaging application on their phone, the smuggler
25  or associates will advise the undocumented alien or the close contact to the undocumented
26  alien about the next steps including the meet-up point.  Using the phone or messaging
27  application, they may discuss the method, manner and payment at that time or after
28  successfully smuggling the undocumented alien into the United States.

d.     The undocumented aliens also will use their phones to make calls or send text messages to discuss the smuggling arrangements with the smugglers themselves, or a go-between such as a family member or close friend prior to and during the smuggling event.  On making their illegal entry into the United States, the smuggled aliens may use their phones to continue to communicate with the smugglers or the go-between such as a family member or close friend to discuss the manner and method of the smuggling activity including the payment.

e.     Subscriber Identity Module (SIM) cards also known as subscriber identity modules are smart cards that store data for certain cellular telephone subscribers.  Such data includes user identity, phone number, network authorization data, personal security keys, contact lists, and stored text messages.  Dependent on the cellular device, information on a SIM cards can be collected as evidence as to the operator use of that particular cellular telephone.  SIM cards may be transferrable between different cellular/mobile telephones.  Human smugglers and their co-conspirators sometimes will replace the SIM (memory) cards in their cellular or mobile phones as a means to avoid detection.

f.     Undocumented aliens are like anyone else who has friends and family. They will use social media accounts such as Facebook to update family and friends to discuss their whereabouts, daily activities or travels as they make their way to the United States. They may use messaging applications such as Facebook Messenger to do the same or the coordinate with the human smugglers.   The undocumented aliens may share photographs of themselves or where they are located.  In order to register their accounts, they will input a name, e-mail address and date of birth and decide how much information to keep public or private from the general public.  At the time of their apprehensions, undocumented aliens who use false documents or make false claims about their identity or family relationships to immigration authorities may still maintain their social media accounts that contain their true name, dates of birth and other personal information about

1  their home, work or social activities as well as photographs of themselves and their daily

2  activities.

3     11.   Based upon my training and experience, consultations with law enforcement

4  officers experienced in human smuggling investigations, and all the facts and opinions set

5  forth in this affidavit, I know that cellular/mobile telephones and SIM cards may and often

6  do contain electronic records, phone logs and contacts, voice and text communications,

7  and data such as emails, text messages, chats and chat logs from various third-party

8  applications, photographs, audio files, videos, and location data.  This information can be

9  stored within disks, memory cards, deleted data, remnant data, slack space, and temporary

10  or permanent files contained on or in the cellular/mobile telephones.

11  **FACTS SUPPORTING PROBABLE CAUSE**

12     12.   During the week of September 10, 2019, approximately eight Haitians

13  representing themselves as father-minor son family units crossed into United States from

14  Mexico near the Tecate, California port of entry.  On further investigation, HSI Special

15  Agents (SAs) determined these four sets of family units did not consist of father-minor son

16  relationships and that these individuals were representing themselves as family units in

17  order to avoid detention and be released into the United States.  Some of these individuals

18  used false names in an attempt to represent themselves as minor children.  Four of those

19  eight individuals were prosecuted and one of those individuals is designated as a material

20  witness.  See *United States v. Guillaume*, 19MJ3964; *United States v. Monfort and Luma*,

21  19MJ3924; *United States v. Estilus*, 19MJ3931 and *United States v. Joseph*, 19MJ3930

22  (material witness complaint).  HSI SAs is examining phones seized in those cases and

23  interviewing other Haitian individuals claiming to be a part of family units.  According to

24  the material witness Edner Joseph, two individuals named Adler Louis JOSAPHAT and

25  Wicknique SERAPHIN aka Rasta were behind this September 10, 2019 smuggling

26  venture.

27     13.   On October 1, 2019, at approximately 11:00 p.m., Border Patrol Agents

28  apprehended a group of individuals without legal status who had just crossed into the U.S.

1 The apprehension occurred in an area approximately 100 yards west of the Tecate,
2 California port of entry and approximately 15 yards north of the border between Mexico
3 and the United States.

4     14.    In this group, there were two individuals who claimed to have a father-minor
5 son relationship: Henry Claude VINCENT as father to Thomas JULES (under the name
6 Carl Henry Vincent). All claimed to be citizens and nationals from Haiti. None of them
7 possessed the necessary documentation to enter or remain in the United States legally.  On
8 apprehension, the members of the group were transferred to the Brown Field Border Patrol
9 Station in San Diego, CA for processing.

10     15.    During initial processing of VINCENT and JULES (under the name Carl
11 Henry Vincent), Agents identified what purported to be a Haitian birth record for Carl
12 Henry Vincent (i.e., JULES).  The birth record showed VINCENT was the father to Carl
13 Henry Vincent, who had a date of birth of August 22, 2002.

14     16.    JULES also told agents that he was Carl Henry Vincent and that VINCENT
15 was his father.  Border Patrol Agents fingerprinted JULES to confirm his identity.
16 Biometrics revealed JULES' true name as Thomas JULES and not a Carl Henry Vincent
17 as he represented himself.  The biometrics information showed JULES had a year of birth
18 in 1989.  Additionally, a biometrics report revealed Thomas JULES was encountered and
19 fingerprinted through partner nation cooperation.  The report reflected that JULES was
20 encountered and fingerprinted on April 28, 2019 in Panama.  On May 29, 2019, JULES
21 was encountered and fingerprinted in the country of Costa Rica.  The report reflected the
22 date of birth associated with JULES' fingerprints would make JULES approximately 30-
23 years-old.

24     17.    On October 2, 2019, Special Agents (SAs) Hinckley and Brown utilized Lion
25 Bridge translation service to interview Thomas JULES in the Haitian Creole language.
26 JULES was advised of his *Miranda* rights. He also was advised it was a federal crime to
27 lie to agents.  JULES signed a *Miranda* waiver of rights form using the alias "Carl Henry
28 Vincent" and agreed to speak with agents. JULES stated his name was Carl Henry Vincent.

1  JULES acknowledged that he had met up with VINCENT in Mexicali, Mexico. JULES
2  said that VINCENT was not his biological father. JULES said that his group had heard
3  from others who claimed to have been granted admission into the United States using
4  counterfeit birth certificates and that they had explained the process to subsequent travelers
5  doing the same thing.

6      18.    JULES then admitted to his true name as Thomas JULES, and not Carl Henry
7  Vincent, and age (approximately 30-years-old). JULES also admitted that he received an
8  email containing the fraudulent birth certificate using the name Carl Henry Vincent and
9  stated it was the name of VINCENT's son.

10     19.    JULES was in possession of **Target Device 2**. JULES consented to a search
11 of **Target Device 2**. Agents began a searched via Cellebrite. However, some Cellebrite
12 functions were not supported and not downloaded.

13     20.    During initial processing by Border Patrol, Henry Claude VINCENT told
14 agents he was traveling with his minor son, Carl Henry Vincent (i.e., JULES) and that his
15 son was 17-years-old. As a form of his own identification, VINCENT presented a passport
16 and birth certificate that appeared to be from Haiti. VINCENT was in possession of **Target
17 Device 1**.

18     21.    Given the facts surrounding the apprehension of the two individuals listed
19 above, and based upon my experience and training, as well as consultation with other law
20 enforcement officers experienced in human smuggling investigations, I submit that there
21 is probable cause to believe that information relevant to the smuggling activities of
22 VINCENT and JULES, including the logistics of traveling from their country of origin
23 through Mexico into the United States, information about their respective true and false
24 identities, and the circumstances surrounding the producing and obtaining the false birth
25 records, will be found in the **Target Devices**. Such evidence could be in the form of
26 communications, records, data (including but not limited to emails, text messages, other
27 social messaging applications), photographs, audio files, videos, or location data.

28     22.    I believe that the appropriate date range for the search of the **Target Devices**

1   is: from May 1, 2019 through October 2, 2019 for **Target Phones 1 and 2** given JULES'
2   statements that he first met VINCENT sometime in May or June 2019 and they coordinated
3   the planning and production of the false birth record in the days leading up to their arrest.

## METHODOLOGY

5   23.   It is not possible to determine, merely by knowing the cellular/mobile
6   telephone's make, model and/or serial number, the nature and types of services to which
7   the device is subscribed and the nature of the data stored on the device.  Cellular/mobile
8   devices today can be simple cellular telephones and text message devices, can include
9   cameras, can serve as personal digital assistants and have functions such as calendars and
10  full address books and can be mini-computers allowing for electronic mail services, web
11  services and rudimentary word processing.  An increasing number of cellular/mobile
12  service providers now allow for their subscribers to access their device over the internet
13  and remotely destroy all of the data contained on the device.  For that reason, the device
14  may only be powered in a secure environment or, if possible, started in "flight mode" which
15  disables access to the network.  Unlike typical computers, many cellular/mobile telephones
16  do not have hard drives or hard drive equivalents and store information in volatile memory
17  within the device or in memory cards inserted into the device.  Current technology provides
18  some solutions for acquiring some of the data stored in some cellular/mobile telephone
19  models using forensic hardware and software.  Even if some of the stored information on
20  the device may be acquired forensically, not all of the data subject to seizure may be so
21  acquired.  For devices that are not subject to forensic data acquisition or that have
22  potentially relevant data stored that is not subject to such acquisition, the examiner must
23  inspect the device manually and record the process and the results using digital
24  photography.  This process is time and labor intensive and may take weeks or longer.

25  24.   Following the issuance of this warrant, I will collect the subject
26  cellular/mobile telephones and subject them to analysis.  All forensic analysis of the data
27  contained within the telephones and their memory cards will employ search protocols
28

1  directed exclusively to the identification and extraction of data within the scope of this
2  warrant.

3      25.   Based on the foregoing, identifying and extracting data subject to seizure
4  pursuant to this warrant may require a range of data analysis techniques, including manual
5  review, and, consequently, may take weeks or months.   The personnel conducting the
6  identification and extraction of data will complete the analysis within ninety (90) days,
7  absent further application to this court.

8                              **CONCLUSION**

9      26.   Based on all of the facts and circumstances described above, there is probable
10  cause to conclude that VINCENT and JULES used the **Target Devices** to facilitate
11  violations of 8 U.S.C. § 1324(a)(1)(A)(i) and (v)(I) – Conspiracy to Bring Certain Aliens
12  Without Presentation; 18 U.S.C. § 371 – Conspiracy to Use False Documents; 18 U.S.C. §
13  1001(a)(2) – False Statements; 18 U.S.C. § 1001(a)(3) – False Documents; and 18 U.S.C.
14  §§ 1519 and 2 – Aiding and Abetting as to the Falsification of Records or Documents in a
15  Federal Investigation.

16      27.   Because the **Target Devices** were seized during the investigation of
17  VINCENT's and JULES' false representation activities and have been securely stored,
18  there is probable cause to believe that evidence of illegal activities committed by
19  VINCENT and JULES and others continues to exist on the **Target Devices**.

20      28.   WHEREFORE, I request that the court issue a warrant authorizing law
21  enforcement agents and/or other federal and state law enforcement officers to search the
22  items described in Attachments A-1 through A-2, and seize the items listed in Attachment
23  B, using the methodology described above.

24
25
26
27
28

1       I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3                                       Respectfully submitted,

4

5                                         Special Agent Mike Brown

6                                         Homeland Security Investigations

7

8   Subscribed and sworn to before me on November **13** , 2019

9

10  THE HONORABLE ANDREW G. SCHOPLER
    UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

### **Target Device 2**

HTC One A9s Phone
IMEI: 351515080300173
S/N:   FA71BBY00074

Currently in the possession of the United States Department of Homeland Security, Homeland Security Investigations at 2255 Niels Bohr Court, San Diego, CA 92154.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the **Target Devices 1 through 2** – collectively, **the Target Devices** - includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.   The seizure and search of the **Target Devices**, will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data for the period from: May 1, 2019 through October 3, 2019 for **Target Devices:**

a.   tending to identify the travel from the country of origin through Mexico into the United States and then to the final destination within the United States; and the smuggling method including the obtaining, making, altering, or using what appear to be official birth records from a foreign country to show a parent-minor child relationship in order to avoid detention or criminal prosecution in the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the travel from the country of origin through Mexico into the United States and then to the final destination within the United States; and, the smuggling method including the obtaining, making, altering, or using what appear to be official birth records from a foreign country to show a parent-minor child relationship in order to avoid detention or criminal prosecution in the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in the travel from the country of origin through Mexico into the United States and then to the final destination within the United States; and the smuggling

method including the obtaining, making, altering, or using what appear to be official birth records from a foreign country to show a parent-minor child relationship in order to avoid detention or criminal prosecution in the United States;

d.   tending to identify travel to or presence at locations such as stash houses, ports of call, launch bays, or delivery points involved in the travel from the country of origin through Mexico into the United States and then to the final destination within the United States; and the smuggling method including the obtaining, making, altering, or using what appear to be official birth records from a foreign country to show a parent-minor child relationship in order to avoid detention or criminal prosecution in the United States;

e.   tending to identify the user of, or persons with control over or access to, the subject telephones; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; and

g.   tending to identify method, and manner of payment for travel from the country of origin through Mexico into the United States and then to the final destination within the United States; and the smuggling method including the obtaining, making, altering, or using what appear to be official birth records from a foreign country to show a parent-minor child relationship in order to avoid detention or criminal prosecution in the United States;

h.   tending to provide the true names, aliases used, dates of birth, home, school, and work addresses, and familial relationships for Henry Claude VINCENT and Thomas JULES;

i.   tending to support or contradict the statements provided by Henry Claude VINCENT and Thomas JULES to Border Patrol Agents and Special Agents

1    with Homeland Security Investigations between October 01 and October 03,
2         2019,
3  which are evidence of crimes and property used in the commission of crimes of violations
4  of 8 U.S.C. § 1324(a)(1)(A)(i) and (v)(I)  – Conspiracy to Bring Certain Aliens Without
5  Presentation; 18 U.S.C. § 371 – Conspiracy to Use False Documents; 18 U.S.C. §
6  1001(a)(2) – False Statements; 18 U.S.C. § 1001(a)(3) – False Documents; and 18 U.S.C.
7  §§ 1519 and 2 – Aiding and Abetting as to the Falsification of Records or Documents in a
8  Federal Investigation.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28